# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SCOTT R. PATTERSON,  :

               Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.  :

Case No. 3:08-cv-262

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict

(now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged

in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on April 8, 2004, alleging disability from January, 2003, due to clubfeet, degenerative arthritis, and a mental impairment. (Tr. 60-62; 70). Plaintiff's application was denied initially and on reconsideration. (Tr. 31-34; 36-37). A hearing was held before Administrative Law Judge Thomas McNichols, (Tr. 219-73), who determined that Plaintiff was not disabled. (Tr.13-25). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge McNichols' decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge McNichols found that Plaintiff last met the insured status requirements of the Act on December 31, 2006. (Tr. 17, ¶ 1). Judge McNichols also found that prior to the expiration of his insured status, Plaintiff had severe chronic foot pain due to bilateral clubfoot deformities with associated residuals of remote prior surgeries he has undergone to treat this condition and a depressed-type bipolar disorder, but that he does not have

3

an impairment or combination of impairments that meets or equals the Listings. *Id.*, ¶ 3; Tr. 19, ¶ 4. Judge McNichols then found that prior to his date last insured, Plaintiff had the residual functional capacity to perform a limited range of sedentary work. (Tr. 20, ¶ 5. Judge McNichols then used section 201.28 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that prior to the expiration of his insured statues, there was a significant number of jobs in the economy that Plaintiff was capable of performing. (Tr. 24, ¶ 10). Judge McNichols concluded that prior to his date last insured, Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 25).

Plaintiff received treatment from Dr. Patterson during the period February, 2001, through August 28, 2003. (Tr. 125-28). At the time of his initial evaluation of Plaintiff, Dr. Sampson noted that Plaintiff had a history of bilateral clubfeet, that his ankles and feet had limited ranges of motion, and that his biggest problem was pain. *Id.* Over time, Dr. Sampson prescribed antiinflammatory medication, braces, and orthotics and noted that Plaintiff continued to have limitations of movement and complaints of pain and stiffness. *Id.*

Examining physician Dr. Cooper reported on June 19, 2004, that Plaintiff was born with clubfeet, has had multiple foot surgeries, that his pain has been getting progressively worse for the past two years, his left foot hurt "all over" with the location variable from day to day, and that his right foot hurt at the dorsum of the mid-foot. (Tr. 129-36). Dr. Cooper also reported that Plaintiff was moderately obese, had an antalgic gait, used a cane held in the right hand, wore bilateral solid AFOs, was able to rise from a seated position and walk on his heels and toes, stood with normal posture, had multiple surgical scars on medial and lateral aspects of both ankles, and that his ankles were fused with very limited dorsiflexion, inversion, or eversion at either ankle. *Id.*

4

Dr. Cooper noted that the medial aspect of Plaintiff's left ankle was extremely tender to palpation, that given the degree of deformity and rigidity of both ankles Plaintiff was at risk for further degeneration of the foot and ankle, and that his diagnoses were talipes varipes, status post multiple foot surgeries including triple arthrodesis, and possible stress fracture of the left talus. *Id.* Dr. Cooper opined that Plaintiff was able to lift ten pounds frequently and twenty pounds occasionally, stand/walk for "less than hours a day", no more than thirty minutes at a time, and that his ability to sit was not affected by his impairment. *Id.*

Examining psychologist Dr. Tanley reported on June 29, 2004, that Plaintiff's MMPI was invalid due to elevation on the F scale, that his examination of Plaintiff was essentially normal, that there were no mental health-related diagnoses, and that his GAF was 90. (Tr. 137-39).

Plaintiff participated in a program of physical therapy December 5, 2004, through January 10, 2005, following which he reported that he had a twenty percent improvement in his symptoms. (Tr. 158).

Plaintiff received treatment from podiatrist Melanie Violand of Grand Lake Podiatry, during the period October, 2004, through at least May 16, 2005. (Tr. 159-68). In October, 2005, Plaintiff's treating podiatrist reported that Plaintiff had calf atrophy of the left leg, decreased muscle power with range of motion of his bilateral ankles, no motion in his ankles, an antalgic gait, was able to ambulate effectively, did not need ambulatory aids, could not sustain a reasonable walking pace, and that he had chronic joint pain and stiffness, signs of limitation of motion, joint space narrowing, bony destruction, and ankylosis. *Id.*

Plaintiff sought mental health treatment at Mental Health Services for Clark County and at the time of his initial evaluation on August 31, 2006, it was noted that Plaintiff had been

5

feeling increasingly depressed over the pat four years, that he reported drinking alcohol almost every night, he was oriented and cooperative, and that his mood seemed depressed. (Tr. 177-85). It was noted further that Plaintiff's speech was verbose, his affect was flat, motor activity seemed to be somewhat dulled, his thought processes appeared to be somewhat loose and tangential, and that his diagnoses were rule out mood disorder and rule out bipolar disorder, and he was assigned a GAF of 53. *Id.*

On November 17, 2006, psychiatrist Dr. Vishnupad reported that Plaintiff was oriented, focused, had normal speech, a circumstantial thought process, flight of ideas, and that his affect was labile. *Id.* Dr. Vishnupad identified Plaintiff's diagnosis as bipolar disorder type II. *Id.* On January 23, 2007, Dr. Vishnupad reported that Plaintiff was moderately to markedly impaired in his abilities to perform work-related mental activities. *Id.* Plaintiff continued to receive mental health treatment during the period March 19 through November 9, 2007. (Tr. 205-11).

Plaintiff returned to Grand Lake Podiatry in October, 2006, at which time the podiatrist noted that Plaintiff's AFO devices needed to be replaced, that he had quite a bit of muscle atrophy in the lower legs and some in the feet, that he was not taking any medications because Plaintiff stated "he is out", and that she (the podiatrist) did not feel comfortable managing Plaintiff's chronic pain because he was starting to want alcohol for pain relief. (Tr. 197-99). In July, 2007, Plaintiff's podiatrist essentially reported that Plaintiff's exam was unchanged and that he would be permitted to return to work in a sit-down position with no standing for more than five minutes per hour and that he was to work for twenty hours a week. (Tr. 213). The podiatrist reported on October 29, 2007, that Plaintiff would benefit from physical therapy to give him some strength in his anterior leg muscles and that she would not prescribe any narcotic pain medication but refer him

for pain management again. (Tr. 212).

Plaintiff consulted with the physicians at Springfield Surgery/Pain management Center in November, 2006, who prescribed narcotic pain medication. (Tr. 173-76).

The medical advisor, (MA), testified at the hearing that Plaintiff had congenital clubfeet, had undergone multiple surgeries, still had some problems with range of motion and pain, that he did not satisfy the Listings, and that he was able to perform sedentary work with a sit/stand opinion. (Tr. 253-63). The MA also testified that Plaintiff could sit for six hours out of an eight hour day and stand or walk for two hours out of an eight hour day, he should wear his support hose, he did not need to use a cane all of the time, and that his clubfeet could cause problems with the knees and hips. *Id.* The MA testified further that the medications Plaintiff was taking could be necessary, and that he was not prevented from working because of a need to lie down. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to give significant weight toe Dr. Vishnupad's opinion, by rejecting his complaints of disabling pain, and by relying on the VE's testimony which was in response to an improper hypothetical question. (Doc. 13).

Plaintiff argues first that the Commissioner erred by failing to give the proper evidentiary weight to Dr. Vishnupad's opinion that he is markedly limited in some of his abilities to perform work-related mental activities.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of

treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In declining to give Dr. Vishnupad's opinion great weight, Judge McNichols noted

that Dr. Vishnupad saw Plaintiff on only a few occasions and also determined that his opinion was not supported by his clinical notes and was inconsistent with other evidence of record. (Tr. 22-23).

First, the Court notes that the record indicates that between November 17, 2006, and November, 2007, Dr. Vishnupad saw Plaintiff on only four occasions at an interval of about once every three months. *See,* Tr. 181, 205-07. In addition, Dr. Vishnupad's clinical notes reveal that while in November, 2006, Plaintiff initially exhibited circumstantial speech and flight of ideas, by April, 2007, and thereafter, he was coherent, oriented, had normal speech, good insight, and that his affect was, at worst, labile. *Id.* On one occasion, specifically, November 9, 2007, almost one year after the expiration of Plaintiff's insured status, Dr. Vishnupad noted that Plaintiff was irritable but also noted that Plaintiff, who was working part-time, had had an argument with his boss. (Tr. 205).

In addition, Plaintiff's counselor's treatment notes do not support Dr. Vishnupad's opinion. Specifically, a review of those notes reveal that they are primarily recitations of Plaintiff's subjective complaints and allegations and contain few objective findings.

Under these facts, the Commissioner had an adequate basis for giving little, if any, weight to Dr. Vishnupad's opinion that Plaintiff is markedly limited in some of his abilities to perform work-related mental activities.

Plaintiff seems to argue that the Commissioner should have sought evidence from a MA on the issue of Plaintiff's alleged mental impairments. However, the Regulations do not require the Commissioner to do so. Rather, the Regulations provide that an ALJ "may ask for and consider the opinions from medical experts". 20 C.F.R. § 404.1527(f)(2)(iii). In view of the fact that the record contains the treatment notes from Plaintiff's own mental health treating sources which, as noted above, contain few objective clinical findings, the Commissioner did not err by

seeking advice from a MA on the issue of Plaintiff's alleged mental impairments.

Plaintiff argues next that the Commissioner erred by rejecting his allegations of disabling pain.

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

There is no dispute that Plaintiff suffers from congenital clubfeet, has undergone surgeries for that condition, has residuals as a result including limited ranges of motion and calf muscle atrophy. The first prong of the *Duncan/Jones* analysis is satisfied.

First, the Court notes that none of the treating, examining, or reviewing sources have

opined that Plaintiff is disabled from all work.

Plaintiff alleges initially that the Commissioner erred in rejecting his allegations of disabling pain because the MA testified that his clubfeet could cause pain which would require medication. However, Plaintiff's argument is misplaced. While it is true that the MA testified that Plaintiff's clubfeet condition could cause pain, as noted above, he nevertheless testified that Plaintiff was capable of performing a range sedentary work.

Plaintiff argues next that the Commissioner erred by relying on his daily activities in rejecting his allegations of disabling pain. The record establishes that Plaintiff engages in several activities including driving daily, cooking, shopping, visiting others, picking up trash, weeding the yard, attending his son's sporting events, reading, and working part-time. *See, e.g.,* Tr. 225, 243-49. As noted above, the Commissioner must evaluate complaints of disabling pain by considering all of the evidence. Therefore, the Commissioner did not err by considering Plaintiff's activities. Further, in view of the range of activities in which Plaintiff participates, the Commissioner did not err by rejecting Plaintiff's allegations of disabling pain.

Plaintiff's final argument is that the Commissioner erred by relying on the VE's testimony because, according to Plaintiff, it was in response to an improper hypothetical question.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey*

*v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

Plaintiff argues that the hypothetical question Judge McNichols propounded to the VE was improper because it did not include the limitations described by Dr. Vishnupad. However, because the Commissioner had an adequate basis for rejecting Dr. Vishnupad's opinion as to Plaintiff's limitations, he was not required to include those limitation is the hypothetical question to the VE.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

April 22, 2009.

                     *s/ Michael R. Merz*
                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).